IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHERRY G. SMITH                                                                                    PLAINTIFF

VS.                                        CIVIL NO. 04-5206

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                DEFENDANT

## MEMORANDUM OPINION

Sherry Smith ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration terminating her disability insurance benefits ("DIB").

**Background:**

The application for DIB now before this court was protectively filed on June 2, 1997, alleging an onset date of December 16, 1996, due to weakness of the right leg and back pain. (Tr. 38-41, 47). By decision dated January 26, 1999, plaintiff was found to have met the requirements of Appendix 1 Listing 9.09 for obesity and, therefore, was disabled within the meaning of the Act. (Tr. 244-251). However, pursuant to a continuing disability review conducting in 2001, plaintiff's benefits were terminated as of August 1, 2001. (Tr. 253-258). Plaintiff appealed this decision, and an administrative hearing was held on March 19, 2003. (Tr. ). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was forty-three years old and possessed the equivalent of a high school education. (Tr. 16, 50). The record reflects that she has past relevant work experience ("PRW") as a nurse's aide, cook, and telemarketer. (Tr. 16, 84).

On June 9, 2003, the Administrative Law Judge (hereinafter "ALJ"), issued a written opinion finding that plaintiff had experienced medical improvement related to her ability to perform work-

related activities as of August 1, 2001, and was capable of performing her past relevant work as a poultry eviscerator. (Tr. 8-19).

On June 1, 2004, the Appeals Council declined to review this decision. (Tr. 7-9). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 5, 6).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d

1211, 1217 (8th Cir.2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

## Discussion:

Of particular concern to the undersigned is the ALJ's improper dismissal of plaintiff's subjective complaints. The ALJ is required to consider all the evidence relating to plaintiff's subjective complaints including evidence that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

In the present case, the ALJ dismissed plaintiff's complaints of chronic back and neck pain, stating that the record contains no evidence of any degenerative condition of plaintiff's weight-bearing joints or spine. (Tr. 16, 19). It is his contention that this lack of evidence renders plaintiff's testimony less than credible. (Tr. 19). While it is true that there are no objective medical tests to indicate that plaintiff was suffering from a degenerative condition concerning her neck or back, we do note that at least two physicians have diagnosed plaintiff with central pain syndrome, chronic benign pain syndrome, myofascial pain syndrome, and possible fibromyalgia. (Tr. 155, 186, 188, 191, 360). Examinations have also revealed arthritic changes of the joints secondary to her obesity, decreased quadriceps strength, decreased dorsiflexion and plantar flexion, right-sided upper and lower extremity motor weakness with some muscle spasm, right wrist extensor tendinitis, and possible intersection syndrome. (Tr. 163, 209, 217, 230, 237, 362, 363).

Unlike acute pain, chronic pain syndrome ("CPS") is an actual illness or medical problem associated with persistent pain, lasting at least three to six months, that does not respond to traditional medical treatment, such as rest, medicine, injections, physical therapy or surgery. *See Chronic Pain Syndrome*, *at* www.thephysicians.com. CPS is a combination of six things: chronic pain; decreased function; decreased physical abilities; emotional stress; psychological issues; and, medicines, especially addicting medicines. *Id*. The six basic areas of physical abilities that are affected include strength, flexibility, endurance/stamina, balance (associated with falls), coordination and reaction time. Other factors that cause additional physical stress to the body are improper body mechanics, poor posture, and excessive body weight. *Id*. CPS makes it much harder for the patient to physically function, which includes limitations regarding their ability to sit, stand, walk, climb, carry, bend, and crawl. *Id*. Because of this, patients with CPS may have limitations at work or be unable to work at all. *Id*. In

addition, they may not be able to participate in hobbies or sports, and are often unable to drive. *Id*. Sometimes CPS becomes so severe that patients require canes or walkers and require assistance with basic self-care activities. *Id*.

The Eighth Circuit has held that subjective complaints of pain that are supported by a consistent diagnosis of chronic lower back pain, coupled with a long history of pain management and drug therapy can serve as an objective basis for pain. *See Cox v. Apfel*, 160 F.3d 1203, 1207. Given the fact that plaintiff has been treated for CPS by a pain specialist for a number of years, we believe that the ALJ erred in dismissing her subjective complaints without considering the effects of CPS on her ability to perform work-related activities. Accordingly, on remand the ALJ is directed to reconsider the evidence, including the results of the various physical examinations that indicate that plaintiff was experiencing muscle spasms, a decreased or limited range of motion, and right-sided weakness.

We also note that the ALJ failed to properly consider plaintiff's psychological impairments. Instead, after reviewing the evidence, he determined that plaintiff had only mild restrictions concerning her activities of daily living and social functioning, with moderate restrictions affecting her ability to concentrate. (Tr. 17). As such, the ALJ concluded that her only non-exertional limitation was a restriction that she perform simple, routine tasks that do not involve interaction with the general public. (Tr. 19). However, psychological assessment examinations have revealed more significant mental impairments. On October 27, 1998, following a consultative examination, Dr. Richard Back diagnosed plaintiff with dementia secondary to old head trauma suffered in an automobile accident . (Tr. 192-196). Although I.Q. testing revealed an average I.Q. of ninety-nine, cognitive testing suggested the possibility of cognitive dysfunction, as well as cortical dysfunction maximized to the left hemisphere, immediate and long-term auditory memory dysfunction, mild aphasia, significant slowing of the right

hand, and impaired visual scanning skills. (Tr. 194-199).

On July 8, 2002, Dr. Gene Chambers examined plaintiff and noted that, although spontaneous, her stream of mental activity was slow. (Tr. 404-408). She could not perform serial calculations from three and her information processing was very slow, as evidenced by problems processing and answering questions. (Tr. 405, 407). In fact, on several occasions, she asked the examiner to explain what was meant by various questions. (Tr. 405). Further, plaintiff was unable to recite her own telephone number, social security number, or full street address. (Tr. 406). Dr. Chambers was even of the opinion that plaintiff's I.Q. was lower than average. As such, he diagnosed her with dementia and dysthymia, stating that her condition was not expected to change over the next twelve months. (Tr. 407).

We also note Dr. Don Donahue's consultative mental RFC assessment indicating that plaintiff suffered from moderate limitations in the areas of understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods of time; completing a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; and, interact appropriately with the general public.[1] (Tr. 409-410). Accordingly, we cannot find substantial evidence to support the ALJ's determination concerning plaintiff's mental impairments. As such, on remand, the ALJ is directed to reconsider the evidence of plaintiff's mental impairments and the limitations imposed by those impairments.

It is also significant to note that the record does not contain an RFC assessment from any of plaintiff's treating physicians. We note, that the opinion of a consulting physician who examined the

---

[1] We note that Dr. Donahue's assessment was rendered after only reviewing plaintiff's medical records. No psychological evaluation was performed.

plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Accordingly, on remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking them to review all of plaintiff's medical records and complete an RFC assessment regarding plaintiff's capabilities during the time period in question. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). The physicians should also be asked to provide the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Based on the foregoing, we reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this the 27th day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE